[Cite as *State v. Sheline*, 2019-Ohio-528.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106649**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**TIMOTHY S. SHELINE**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590948-A

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** February 14, 2019

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:     Anna M. Faraglia
        Daniel A. Cleary
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Timothy Sheline ("appellant"), brings this appeal challenging his convictions for murder and aggravated arson. Specifically, appellant argues that the trial court erred by denying his motion in limine and permitting the state to introduce other acts evidence at trial; his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence; the trial court erred by admitting hearsay evidence and evidence that was not properly authenticated; the trial court erred by permitting a state's witness to testify remotely via live video link; the trial court erred by denying his motions to dismiss based on a statutory speedy trial violation and preindictment delay; the trial court erred by denying defense counsel's motions for a mistrial; and the trial court erred by imposing consecutive sentences. After a thorough review of the record and law, this court affirms.

## I.   Factual and Procedural History

**{¶2}** The instant matter arose from an August 29, 2007 incident during which the victim in this case, Gwendolyn Bewley (hereinafter "Bewley" or "victim"), was murdered and a fire broke out in her house in Fairview Park, Ohio. At the time of the incident, appellant was living next door to the victim with his brother, Scott Sheline (hereinafter "Scott").

**{¶3}** The victim was a 67-year-old retiree. After moving in with his brother, appellant befriended the victim and began assisting her with various organizational and financial matters. In this capacity, appellant had access to the victim's credit cards. Approximately two weeks before the August 29, 2007 incident, the victim disputed one of the charges appellant made using her credit card. Scott testified at trial that the victim confronted appellant about the transaction in question and wanted him to get a job so that he could pay her back.

**{¶4}** Appellant and the victim had lunch together on August 29, 2007. Thereafter, the victim attended a skating lesson from approximately 1:00 to 1:40 p.m. in Brookpark, Ohio. The victim returned home after her lesson. The victim's friend, Lynn Malec, spoke with the victim on the phone around 2:00 p.m. According to Malec, the victim ended the phone call abruptly, in the middle of their conversation.

**{¶5}** First responders were dispatched to the victim's house at approximately 4:45 p.m. regarding a report of a fire. Investigators spoke with some of the victim's neighbors, including Scott. Police officer John Manion learned that appellant had lunch with the victim earlier that day. Scott placed a phone call to appellant and handed the phone to Officer Manion. Appellant acknowledged that he had lunch with the victim earlier that day before her skating lesson. He also advised Officer Manion that he was in Michigan on business.

{¶6} Lieutenant Paul Shephard of the Fairview Park Police Department spoke with appellant about his whereabouts. Appellant asserted that he left for Michigan at approximately 12:40 p.m., and that he was in Michigan at the time the fire broke out.

{¶7} Fire investigators determined that the origin of the fire was the victim's body and that the fire was deliberately set. Furthermore, burning papers had been piled up on the victim's body. Investigators ruled out other potential causes, such as a kitchen accident, faulty appliance, and a smoking-related accident.

{¶8} Frank Reitmeier, from the Ohio Fire Marshal's Office, testified regarding the cause and origin of the fire: "It's my opinion that this fire was incendiary, which means it was — it was started, a fire started by a person in an area that should not have been started." (Tr. 1610.) He went on, "[t]he area of origin would have been the pile of papers that were placed on top of the body, the dead body of Ms. Bewley." (Tr. 1610.)

{¶9} Reitmeier testified that on the evening of August 29, 2007, appellant checked into a hotel in Toledo, Ohio at 8:49 p.m., using the victim's credit card. He stayed at the hotel until September 7, 2007. However, appellant repeatedly checked out and then checked back in, occupying different rooms. Reitmeier also determined that appellant ate at four restaurants in the Toledo and Maumee, Ohio area using the victim's credit card.

{¶10} Philip Dolence, of Dolence Electrical Consultants, testified that he investigates the origin and causes of fires. State Farm Insurance Company requested that Dolence investigate the Bewley fire. He conducted an investigation and determined that the origin of the fire was the victim's body. Dolence provided the following testimony regarding the cause of the fire: "My opinion is that this was, in fact, based on the burn patterns and physical evidence that I had

seen and examined, personally, that this was in fact an intentional act of arson, a deliberately set fire, based on the things that I have testified, examined, and know about this case." (Tr. 1214.)

{¶11} After reviewing appellant's phone records, however, investigators discovered that appellant was not in Michigan, as he claimed. Rather, at the time that first responders were alerted to the fire, appellant was in North Olmsted and Westlake, Ohio. When Scott called appellant at 4:45 p.m., phone records reveal that appellant was in Sheffield, Ohio.

{¶12} Dr. Darin Trelka performed an autopsy in August 2007. He explained that a lot of details were lost as a result of the extensive thermal injuries and charring to the victim's body. Dr. Trelka was unable to determine whether the victim suffered any trauma due to the charring and thermal injuries. Dr. Trelka opined that there was no evidence that the victim died of natural causes. He reviewed the victim's medical records, which reflected that the victim stopped smoking at the age of 45. Dr. Trelka performed a toxicology test on the victim which was negative for carbon monoxide. This lead him to believe that the victim was dead before the fire started, as she did not breathe in any carbon monoxide. Dr. Trelka concluded that the victim's cause of death was homicidal violence. (Tr. 1025-1026.)

{¶13} Detective Thomas Harrington of the Fairview Park Police Department examined the victim's mail and subpoenaed appellant's PayPal records, which investigators were interested in because Bewley's Discover credit card had been used for two PayPal transactions, one for $600 and another for $300, nearly one week after her death. (Tr. 1695-1696.) Detective Harrington determined that the $600 transaction was transferred to appellant's account, and the $300 transaction was transferred to the account of one of appellant's friends. A PayPal account was set up in the victim's name on September 4, 2007 — six days after her death, and the phone number listed for this account was appellant's cell phone number.

**{¶14}** The victim's AT&T MasterCard was used to make purchases at gas stations, a pornography website, Meijer's, and Walmart, from September 4 to September 13, 2007. Detective Harrington also reviewed documents from appellant's Rewards 660 account.[1] On August 28, 2007, $134.64 was credited to appellant's rewards account from the victim's credit card; $167.71 on August 13; and several attempts were made to credit appellant's account using the victim's AT&T MasterCard after her death, but they were declined.

**{¶15}** Detective Harrington reviewed documents from the victim's Discover credit card account. These documents included a dispute letter dated August 25, 2007, and reflected a PayPal charge on September 5, 2007. Detective Harrington reviewed documents from the victim's Sears Gold MasterCard. These documents reflected charges of $311.30 to appellant's Rewards 660 account on July 28 and August 13, 2007; and a charge of $134.64 to appellant's Rewards 660 account on August 28, 2007. Finally, Detective Harrington reviewed documents from the victim's Citibank credit card, which included a dispute letter from security services.

**{¶16}** Appellant was arrested on September 8, 2007. At the time of his arrest, appellant was driving the victim's rental car, he had three of the victim's credit cards and her laptop computer in his possession, and investigators found credit card receipts from the Toledo area inside the vehicle. Lieutenant Shephard testified that a white T-shirt and pair of jeans were recovered from the vehicle's trunk. He explained, "[t]he white T-shirt and jeans were sort of soiled. They were washed, but they were dirty. And when you looked at it there was what appeared to be dried blood on it." (Tr. 1901.)

---

[1] "Rewards 660" is an account/credit card issued by Visa. *See* state's exhibit No. 298.

{¶17} Appellant was initially charged in a six-count indictment in Cuyahoga C.P. No. CR-07-501364-A.  On August 19, 2008, appellant pled no contest to one count of fourth-degree felony receiving stolen property, two counts of fifth-degree felony unauthorized use of vehicle, and three counts of fifth-degree felony receiving stolen property.  The trial court found him guilty on all six counts.  On January 27, 2009, the trial court sentenced appellant to a prison term of three and one-half years.

{¶18} Thereafter, in September 2014, a forensic analysis of the victim's laptop computer, which appellant was in possession of when he was arrested, was conducted.  The forensic examination revealed that there was a lot of activity on the computer that began on August 29 and 30, 2007.  Specifically, the laptop was used to access banking sites, Western Union, Washington Mutual, a "Rewards 660" website, and PayPal.  Money was extracted from a credit card linked to the victim's PayPal account on September 5, 2007.  Investigators determined that these sites were accessed by accounts that were traced back to appellant — foxsheline@yahoo.com and foxsheline@hotmail.com.

{¶19} Subsequently, on December 30, 2014, the Cuyahoga County Grand Jury returned an eight-count indictment charging appellant with:   (1) murder, in violation of R.C. 2903.02(A); (2) murder, in violation of R.C. 2903.02(B); (3) aggravated arson, in violation of R.C. 2909.02(A)(1); (4) aggravated arson, in violation of R.C. 2909.02(A)(1); (5) aggravated arson, in violation of R.C. 2909.02(A)(2); (6) felonious assault, in violation of R.C. 2903.11(A)(1); (7) theft, in violation of R.C. 2913.02(A)(1), with a furthermore specification alleging that the victim of the theft offense was an elderly person or disabled adult and that the value of the property or services stolen was $500 or more and less than $5,000; and (8) tampering with evidence, in

violation of R.C. 2921.12(A)(1). Appellant was arrested on December 31, 2014. He entered a plea of not guilty during his January 5, 2015 arraignment.

{¶20} On May 27, 2015, the state agreed to dismiss Counts 6, 7, and 8 of the indictment based on the fact that the statutes of limitations had expired. (Tr. 5.)

{¶21} The relevant procedural history of the case will be addressed below in the analysis of appellant's assignments of error.

{¶22} On December 12, 2016, appellant's trial originally commenced. However, trial was continued and rescheduled to January 9, 2017, at appellant's request, based on the additional information that had been brought forward by appellant. The case was transferred to a new trial judge on January 9, 2017, for "good cause shown."

{¶23} A jury trial commenced on October 23, 2017. The jury returned its verdict on November 7, 2017. The jury found appellant guilty on all five counts. The trial court ordered a presentence investigation report and set the matter for sentencing.

{¶24} The trial court held a sentencing hearing on November 29, 2017. The trial court determined that the murder convictions on Counts 1 and 2 merged for sentencing purposes. The state elected to sentence appellant on Count 1. The trial court sentenced appellant to an aggregate prison term of 20 years to life: a sentence of life imprisonment on Count 1, and five-year prison terms on Counts 3, 4, and 5. The trial court ordered Counts 3, 4, and 5 to run concurrently with one another but consecutively to the "mandatory [sentence of] 15 years to life [o]n Count 1 for a prison term of 20 years to life." Trial court's November 30, 2017 sentencing journal entry.

{¶25} On December 26, 2017, appellant filed the instant appeal challenging the trial court's judgment. He assigns eight errors for review:

I.   The trial court erred by denying appellant's motion in limine and allowing the state to introduce hearsay and other acts evidence in violation of [E]vid.[R]. 401, 402, 403, and 404([B]) and appellant's constitutional rights to due process, a fair trial and Sixth Amendment right to confront witnesses.

II.   The [t]rial [c]ourt erred by [d]enying [a]ppellant's motions for acquittal due to insufficient evidence.

III.   The [c]onvictions [w]ere [a]gainst [t]he [m]anifest [w]eight [o]f [t]he [e]vidence.

IV.   The trial court erred by admitting evidence that was not properly authenticated and violated Evid.R. 802 and 803 and deprived [a]ppellant of his constitutional rights to due process and a fair trial.

V.   The trial court erred by allowing Rosemary Grubbs to testify by video where she was not unavailable.

VI.   The trial court erred by denying the motions to dismiss for violation of speedy trial and due to pre-indictment delay.

VII.   The trial court erred by denying the motions for mistrial.

VIII.   The trial court erred by imposing consecutive sentences.

## II.   Law and Analysis

### A.   Motion in Limine

{¶26} In his first assignment of error, appellant argues that the trial court erred by denying defense counsel's motion in limine and permitting the state to introduce other acts evidence.   He contends that the other acts evidence deprived him of his constitutional rights to due process and a fair trial.

{¶27} The state filed a notice of intent to use other acts evidence in which it asserted that it intended to introduce evidence at trial related to appellant's relationship with Judith Spang ("Judith") and his 1989 conviction in Lucas County[2] for arson, in violation of R.C. 2909.03.

---

[2] Lucas C.P. No. CR-89-6853-A.

The state represented that it intended to use other acts evidence to show appellant's motive and "a clear modus operandi in which [appellant] burns down the residence of women with whom he is romantically involved." (Notice of intent to use other acts evidence at 2.)

{¶28} In response to the state's notice of intent, defense counsel filed a motion in limine to exclude any evidence relating to appellant's other crimes, wrongs, or bad acts. Therein, defense counsel argued that the evidence would be irrelevant to the charges at issue in this case, and that the evidence would be unfairly prejudicial and deny appellant his rights to due process and a fair trial.

{¶29} The trial court held a hearing on defense counsel's motion in limine on December 12, 2016. (Tr. 48.) The state argued that an exception to Evid.R. 404(B) applied, in that the other acts evidence was admissible to establish identity through a modus operandi. The state asserted that appellant and Judith were dating and that their relationship "quickly deteriorated." (Tr. 42.) The state further alleged that Judith discovered that appellant was using her credit card without her permission which caused her to break up with him.

{¶30} Defense counsel argued that the other acts evidence was not necessary to prove identity and that the state could establish identity by other means, such as scientific evidence, evidence related to credit card transactions, and cell phone records. Defense counsel contended that the other acts evidence was far more prejudicial than probative and that the prejudice could not be cured by a limiting instruction. Finally, defense counsel opined that the state was attempting to circumvent appellant's Fifth Amendment right to refuse to testify at trial.

{¶31} After considering the parties' arguments, the trial court ruled that it would allow the state to introduce other acts evidence over defense counsel's objection. (Tr. 48.) The

record reflects that the state introduced other acts evidence at trial through the testimony of Judith's son, Jason Spang ("Jason"), and Rosemary Grubbs ("Grubbs").

### 1.    Standard of Review

**{¶32}** This court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion.   *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).   Accordingly, our inquiry is limited to determining whether the trial court's evidentiary rulings were unreasonable, arbitrary, or unconscionable.   *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

**{¶33}** Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

**{¶34}** In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, the Ohio Supreme Court set forth a three-part test for trial courts to conduct in order to determine whether to admit other acts evidence at trial:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence, Evid.R. 401.   The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).   The third step is to consider whether the

probative value of the other acts evidence is substantially outweighed by the

danger of unfair prejudice. *See* Evid.R. 403.

*Williams* at ¶ 20.

## 2. Jason Spang

**{¶35}** As noted above, the state indicated in its notice of intent to use other acts evidence that it intended to use the evidence pertaining to appellant's relationship with Judith and his 1989 arson conviction to establish motive and identity through a modus operandi. In its appellate brief, the state argues that this other acts evidence was relevant to establishing appellant's motive, identity through a certain modus operandi, and the absence of mistake pertaining to Bewley's murder — when appellant's relationships with these women began to dissolve, appellant used arson as a means of revenge. The state further contends that the other acts evidence was admissible to show motive and identity through a certain modus operandi — appellant's motive was to target older women for financial support and burn down their residence when there was a falling out. The state emphasizes that appellant placed identity at issue at trial, blaming his brother Scott for the murder of Bewley and arson at her house.

**{¶36}** Judith did not testify at trial. However, her son Jason testified about appellant's relationship with his mother. Appellant and Judith were romantically involved in 1987 or 1988, and appellant was living with Judith and her two sons. Jason testified that after appellant moved into the house, he and his brother believed that money was missing from their rooms. (Tr. 1972.) He alleged that appellant stole money from his piggy bank.

**{¶37}** Jason testified that appellant moved out of the house, but still continued to come around. (Tr. 1973.) He explained that there was an issue with the home's furnace, and appellant volunteered to fix the furnace. Jason asserted that after appellant had worked on the

furnace, a fire broke out in the house. Investigators determined that the cause of the fire was arson and that the origin of the fire was the furnace. (Tr. 1976.) Appellant ultimately accepted responsibility for his involvement in the incident, and he pled guilty to arson. (Tr. 1979.)

**{¶38}** In the instant appeal, appellant argues that Jason's testimony was irrelevant, he was 14 years old at the time of the incident, and Jason acknowledged at trial that he was "not fully engaged in the situation" that transpired between his mother and appellant. Appellant further contends that the 1989 fire at the Spang house and the 2007 fire at Bewley's house were not similar because there was no one home at the time of the Spang fire, no one was killed or set on fire, and the Spang fire involved a problem with a furnace that appellant fixed. Other than the fact that both incidents involved a fire, appellant asserts, there are no similarities or resemblances between the Spang incident and the Bewley incident.

**{¶39}** "Although there are several uses for other acts evidence, it is typically applied to questions of identity — that evidence of an act is so similar to the act underlying the charged offense that the defendant's involvement in one is inferred from his involvement in the other." *State v. Hartman*, 8th Dist. Cuyahoga No. 105159, 2018-Ohio-2641, ¶ 39.

> The term "modus operandi" means the method of operating or the manner of procedure and is attached to the identity purpose of Evid.R. 404(B). *See State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus ("To be admissible to prove identity through a certain modus operandi, other acts evidence must be related to and share common features with the crime in question."). *See also State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), syllabus.

*Id*.

**{¶40}** After reviewing the record, and applying the three-part *Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, test to the facts of this case, we find no basis upon

which to conclude that the trial court abused its discretion in admitting the other acts evidence involving Judith and the 1989 arson.

{¶41} "Courts have generally recognized 'that evidence of other fires implicating the defendant may be admitted whenever it is shown to be relevant to a contested issue in the case.'" *State v. Grant*, 67 Ohio St.3d 465, 471, 620 N.E.2d 50 (1993), quoting Annotation, *Admissibility, in Prosecution for Criminal Burning of Property, or Maintaining Fire Hazard, of Evidence of Other Fires*, 87 A.L.R.2d 891, 894 (1963). The *Grant* court went on to hold that the other acts testimony regarding other fires in which the defendant was implicated was (1) relevant to the defendant's guilt, (2) tended to negate the possibility of accident, (3) tended to show a common plan or scheme and identify the defendant as the arsonist, and (4) could be considered as proof of preparation. *Id*. at 471-472.

{¶42} In the instant matter, like *Grant*, the other acts evidence was relevant to the identity of the arsonist involved in the 2007 fire at Bewley's home, an issue that was contested at trial. Furthermore, the other acts evidence was admissible to prove appellant's identity through a certain modus operandi, in that he used arson as a means of hurting and/or retaliating against Judith and Bewley when he had a falling out with them or perceived a slight.

{¶43} First, regarding the 1989 incident, appellant was alleged to have stolen money from the rooms of Judith's children. As a result, she asked appellant to move out. After appellant volunteered to fix the furnace in the Spang home, a fire broke out in the house. The fire was determined to be arson, with the origin being the furnace appellant had worked on.

{¶44} Second, regarding the 2007 incident, Bewley disputed at least one of the transactions appellant made with her credit card, confronted appellant about the transaction, and

insisted that he pay her back. Shortly after this confrontation, a fire broke out in Bewley's home. The fire was determined to be arson, with the origin being Bewley's body.

**{¶45}** We acknowledge that there are differences between the 1989 arson involving Judith and the 2007 incident involving Bewley. For instance, appellant was romantically involved with Judith, and was living with her and her two children. On the other hand, appellant and Bewley were not romantically involved, nor were they living together. Furthermore, the fire at the Spang house occurred after appellant volunteered to fix the furnace. No one was present in the home when the fire broke out, and appellant was not physically violent with any of the occupants. On the other hand, the evidence from the fire at Bewley's house indicates Bewley had been physically attacked and that she was dead before the fire was set. The state's experts testified that the cause of death was "homicidal violence."

**{¶46}** In *Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616, the Ohio Supreme Court described when other acts evidence is admissible to show modus operandi:

> Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)." [*Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180, at syllabus]. "'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190 [(1990)]. While we held in *Jamison* that "*the other acts need not be the same as or similar to the crime charged*," *Jamison*, syllabus, the acts should show a modus operandi identifiable with the defendant. *State v. Hutton*, 53 Ohio St.3d 36, 40, 559 N.E.2d 432 [(1990)].

(Emphasis added.) *Lowe* at 531.

**{¶47}** As noted above, courts have recognized that evidence of other fires implicating the defendant may be admitted when the evidence is relevant to a contested issue in the case. *Grant*,

67 Ohio St.3d at 471, 620 N.E.2d 50. This court applied the *Grant* holding in *State v. Harrison*, 8th Dist. Cuyahoga No. 75294, 1999 Ohio App. LEXIS 5908 (Dec. 9, 1999).

{¶48} In *Harrison*, the defendant set two vehicles on fire, and these fires spread to adjacent houses in the area. *Id*. at 1. The state presented evidence that demonstrated the defendant had an "acrimonious relationship" with one of the female victims. *Id*. In fact, the defendant admitted that there was "bad blood" between her and the female victim. *Id*. at 4. The state introduced evidence of the defendant's prior arson conviction in which she set a car on fire in order to retaliate against an unrelated individual with whom the defendant had a dispute. *Id*. at 3. On appeal, this court held that the trial court did not err in admitting the evidence of the defendant's prior arson conviction:

> Here, the evidence of defendant's previous arson bore an uncanny resemblance to the current offense. Defendant not only admitted setting a car on fire but said she did so as a means of avenging a perceived slight. In this case, defendant admitted bad blood existed between her and the victim, and witnesses testified that defendant admitted setting the fires, going so far as to say that she would pay for the damages. The similarities between the offenses were sufficiently relevant that the court did not abuse its discretion by permitting evidence of the prior conviction.

*Id*. at 4.

{¶49} In *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, the defendant was prosecuted for murdering Amanda Maher. Investigators determined that the defendant sexually assaulted the victim before she died. The state introduced evidence of a prior rape committed by the defendant. The Ohio Supreme Court held that the trial court did not abuse its discretion in admitting the other acts evidence because it was related to the defendant's identity and established a modus operandi on his part. *Id*. at ¶ 104. The court explained,

[t]he acts leading up to [the prior victim's] rape and Maher's murder were very similar. Both times, Myers went to a Xenia bar where he saw a young woman and her male companion get into an argument. In both instances, after the male companion left the woman at the bar alone, Myers assured the woman that everything would be fine and offered to give her a ride home. In each instance, Myers left the bar alone with the young woman, took her to a secluded area where he used a weapon, and sexually assaulted the victim. The difference in the sexual assaults was that Maher apparently resisted, which resulted in her murder.

*Id.* at ¶ 105.

{¶50} In *State v. Keith*, 8th Dist. Cuyahoga No. 69267, 1997 Ohio App. LEXIS 914 (Mar. 13, 1997), the defendant was prosecuted for five counts of arson and grand theft. The charges arose from a tumultuous relationship the defendant had with the victim, Jamie Baker. The state introduced evidence of a prior incident during which the defendant threw a brick through the window of Baker's home. On appeal, the defendant argued that the trial court erred by admitting the other acts evidence, as it was prejudicial and tended to portray him "as a bad person likely to commit the arson crimes with which he was charged." *Id*. at 15.

{¶51} This court acknowledged that the defendant's prior conduct — including driving up and down the victim's street, tracking the victim's movements, repeatedly contacting the victim and attempting to resume the relationship, and the incident during which the defendant threw a brick through the victim's window — and the arson and theft offenses with which the defendant was charged "represented a measured and escalating modus operandi, whereby defendant sought to isolate Ms. Baker from her friends and compel her to return to him." *Id*. at 18. This court also explained that the identity of the perpetrator of the arson and grand theft

offenses was "the key issue in this case," as the defendant denied any involvement in the offenses. *Id.*

{¶52} This court held that the trial court did not abuse its discretion in admitting the other acts testimony:

> The State's case was largely built on circumstantial evidence plus his admissions to establish defendant's link to the arson crimes. Therefore, the brick incident and the defendant's acknowledgment of guilt therefor were properly admissible to show a predicate relationship illustrating defendant's modus operandi or pattern of terrorism to achieve his ends. When defendant's stalking, personal entreaties, leaflets and brick did not work, and he got caught in the brick episode, he escalated the terror indirectly by hiring third parties to set fires to her friends' cars.
>
> A review of the record shows that the trial court instructed the jury without objection on the limited nature of other acts evidence. (Tr. 2771.) Further, when viewed in the context of the totality of the evidence in conjunction with the curative instruction, we cannot say that the other acts evidence was so prejudicial as to deny the defendant a fair trial. *State v. Simko*, 71 Ohio St.3d 483, 491, 644 N.E.2d 345 [(1994)].

*Keith* at 19-20. Finally, this court determined that any error in the admission of other acts evidence was harmless, emphasizing that "[t]he overwhelming nature of the admissible evidence against defendant would easily establish that he was guilty as charged." *Id*. at 25.

{¶53} In the instant matter, like *Keith*, the state's case against appellant was largely circumstantial. The identity of the perpetrator that attacked Bewley and set the fire in her home

was the key issue at trial, an issue that appellant placed at issue by suggesting that Scott or Norman Skuderin[3] were responsible.

{¶54} Notwithstanding the differences between the 1989 fire involving Judith and the 2007 fire involving Bewley, we find that the other acts evidence involving the 1989 fire was relevant to appellant's identity and established a distinct and unique modus operandi on his part — using arson as a means of retaliation. Furthermore, we find that the circumstances under which the fires occurred were very similar, in that appellant had a falling out with Judith and Bewley and/or perceived that he had been slighted by the women, and used arson as a means of retaliation.

{¶55} Like *Keith*, 8th Dist. Cuyahoga No. 69267, 1997 Ohio App. LEXIS 914, the trial court in this case instructed the jury on the limited nature of the other acts evidence involving Judith and the 1989 fire. Specifically, the trial court provided the following limiting instruction to the jury:

> Evidence was received about the commission of acts other than the offense to which [appellant] is charged in this trial. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of [appellant] in order to show that he acted in conformity or in accordance with that character.
>
> If you find that the evidence of the other act is true and that [appellant] committed them, you may consider that evidence only for the purpose of deciding whether it proves, A, the absence of mistake or accident; B, [appellant's] motive, opportunity, intent or; C, purpose, preparation or plan to commit the offense charged in this trial, or knowledge of the circumstances surrounding the offense charged in this trial or; D, the identity of the person who committed the offense in this trial.

---

[3] Skuderin and the victim had a close, intimate relationship, dating back to 1990. (Tr. 953-956.) He was at the skating rink on August 29, 2007, during the victim's lesson and planned to meet her later that evening. (Tr. 964-965.)

That evidence cannot be considered for any other purpose.

(Tr. 2210-2211.)   A jury is presumed to follow the trial court's instructions.   *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).

{¶56} For all of the foregoing reasons, we cannot say that the other acts evidence involving Judith and the 1989 fire, when viewed in the context of the totality of the state's evidence and in conjunction with the trial court's limiting instruction, was so prejudicial to appellant that it denied him of a fair trial.   Accordingly, we find no basis upon which to conclude that the trial court's admission of the evidence was arbitrary, unreasonable, or unconscionable.

{¶57} Finally, assuming, arguendo, that the trial court erred in admitting Jason's other acts testimony, any error would be harmless pursuant to Crim.R. 52(A).   *State v. Mims*, 8th Dist. Cuyahoga No. 100520, 2014-Ohio-5338, ¶ 60; *State v. Bell*, 8th Dist. Cuyahoga No. 97123, 2012-Ohio-2624, ¶ 59.   Viewing the totality of the circumstantial evidence introduced in this case, as detailed in our analysis of appellant's second and third assignments of error, we find the admission of Jason's other acts testimony was harmless.   Considering the circumstantial evidence introduced by the state establishing appellant's guilt in murdering the victim and setting her body on fire, the trial court's error in admitting the other acts evidence involving Judith and the fire at her home was harmless beyond a reasonable doubt.   *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 117, citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 33.

{¶58} Based on the state's circumstantial evidence and Malec's testimony that the victim abruptly ended their phone conversation, a reasonable inference could be made that the victim

was taken by surprise in her own home.   The origin of the fire was the victim's body, specifically her head and upper torso.   Regarding a financial motive, appellant had access to the victim's credit cards and, approximately two weeks before the incident, she confronted him and disputed at least one of the charges incurred using her credit card.   Appellant continued to use the victim's credit cards and vehicle after the August 29, 2007 incident.

**{¶59}** Based on the foregoing analysis, appellant's first assignment of error is overruled with respect to the other acts evidence involving Judith and the 1989 fire at her home.

### 3.   Rosemary Grubbs

**{¶60}** The state also presented other acts testimony through Grubbs regarding her romantic relationship with appellant and appellant's conduct after they broke up.   Specifically, Grubbs testified that after she ended the relationship, appellant sent her nasty emails, verbally abused her, and sent a letter to Grubbs's employer.   Grubbs also testified about an incident during which appellant acted belligerently towards an employee at Best Buy, which made her uneasy.   In its notice of intent to use other acts evidence, the state did not indicate that it intended to use other acts evidence involving Grubbs.

**{¶61}** Appellant argues that the trial court erred by admitting Grubbs's testimony because the testimony had no relevance to the case.   Specifically, appellant contends that Grubbs did not know the victim, and that the state used her testimony to "depict [appellant as] an aggressive, belligerent person."   Appellant's brief at 28.   Appellant argues that Grubbs's testimony about the email appellant sent her and his conduct at Best Buy was irrelevant and inadmissible under Evid.R. 404(B) pursuant to the three-part test in *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278.

**{¶62}** The state, on the other hand, argues that the other acts evidence involving Grubbs was relevant to establishing appellant's motive and intent — appellant targeted older women and when the relationships ended, he sought revenge.

**{¶63}** After reviewing the record, and applying the three-part *Williams* test to the facts of this case, we find no basis upon which to conclude that the trial court abused its discretion in admitting the other acts evidence involving the emails that appellant sent to Grubbs. Grubbs's testimony regarding the emails that appellant sent her is not only relevant to establishing the identity of the perpetrator of the murder and arson offenses, it was imperative to the state's case. Grubbs's testimony about the emails appellant sent her confirmed that the accounts used to access the banking websites on the victim's computer after her death belonged to appellant.

**{¶64}** As noted above, the forensic examination of the victim's computer revealed that the banking websites were accessed by a "foxsheline" account. (Tr. 1531.) Furthermore, Eric Devlin, who conducted the forensic examination, testified that he was able to rebuild approximately 1,500 web-based emails for "foxsheline" email accounts through the email providers yahoo and hotmail. Devlin explained, "I found personal [emails] that were composed to a Rosemary Grubbs by — it was under the foxsheline [email] account and it was signed by [appellant], as well." (Tr. 1524.) Grubbs testified that appellant referred to himself in emails as "Fox." (Tr. 1290.) Accordingly, the trial court did not err in admitting this other acts evidence.

**{¶65}** On the other hand, the other acts evidence involving Grubbs that pertained to her relationship with appellant and his conduct following their break-up is arguably irrelevant to appellant's involvement in the murder and arson involving Bewley. Furthermore, although other acts evidence may be admitted for the legitimate purpose of showing motive, we cannot say

that Grubbs's testimony regarding appellant's conduct after their relationship ended was relevant to appellant's motive for killing the victim and setting her body on fire. The state asserts that appellant's motive was "to target older women for financial support and then burn down their residence in revenge when the relationship begins to dissolve." Appellee's brief at 18-19. The other acts evidence involving Grubbs pertained to appellant's conduct after she ended their romantic relationship — there was no evidence that Grubbs was supporting appellant financially, nor that he resorted to arson as a means of revenge for the break-up.

{¶66} Nevertheless, we cannot say that the error in the admission of Grubbs's testimony, if any, was such that it affected appellant's substantial rights and that there exists a reasonable probability that but for the admission of her testimony, the outcome at trial would have been different. *See Parma v. Odolecki*, 8th Dist. Cuyahoga No. 104160, 2017-Ohio-2979, ¶ 64-65.

{¶67} Based on the foregoing analysis, appellant's first assignment of error is overruled with respect to the other acts evidence involving Grubbs.

## B. Crim.R. 29 Motion/Sufficiency

{¶68} In his second assignment of error, appellant argues that the trial court erred by denying defense counsel's Crim.R. 29 motion for a judgment of acquittal and that his convictions were not supported by sufficient evidence.

> A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would

convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Keller*, 8th Dist. Cuyahoga No. 106196, 2018-Ohio-4107, ¶ 19.

### 1. Murder

**{¶69}** Appellant was convicted of murder, in violation of R.C. 2903.02(A) and (B), which provide,

> (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

> (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

**{¶70}** In support of his sufficiency challenge, appellant argues that the state failed to prove he purposely caused the victim's death and that he caused her death as a proximate result of committing or attempting to commit felonious assault. In support of his argument, appellant contends that there was no evidence indicating that the victim had been assaulted, citing Dr. Trelka's testimony that he did not observe any gunshot wounds, stab wounds, or lethal injuries that the victim sustained. Appellant's argument is misplaced.

{¶71} As noted above, Dr. Trelka explained that he was not able to determine much by examining the skin on the victim's scalp, face, and neck due to the extent of the charring from the fire. The extensive charring and "thermal artifacts" affected his ability to detect any trauma that the victim may have suffered. He testified that "a lot of detail was — was covered up by the thermal injury" and that "60 percent of the [the victim's] surface was charred." (Tr. 1060-1061.) The charring primarily occurred on the victim's upper torso, face, and head. Based on Dr. Trelka's testimony regarding the condition of the victim's body and the evidence that was lost in the fire, appellant's reliance on the lack of fatal wounds observed during the autopsy is misplaced.

{¶72} Although the state did not present direct evidence establishing that appellant murdered the victim and started the fire inside her house, it is well-established that a conviction can be sustained based on circumstantial evidence alone. *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236 (1988). In fact, circumstantial evidence may be as persuasive as, or even more persuasive than direct evidence. *State v. Ballew*, 76 Ohio St.3d 244, 249, 667 N.E.2d 369 (1996), citing *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990).

> Often, in arson cases, there is no eyewitness to the arson. Courts in this state have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction. [(Citations omitted.)] "[']Of necessity, proof of arson must often rely heavily on circumstantial evidence because of the nature of the crime. But, as in all crimes, circumstantial evidence may establish any given element of the offense. Motive and opportunity are facts which can weigh heavily in establishing arson.[']" *State v. Hoak*, [9th Dist. Lorain No. 94CA005917, 1995

Ohio App. LEXIS 3335, 10 (Aug. 9, 1995)], quoting *State v. Shaver*, [9th Dist. Lorain No. 89CA004505, 1989 Ohio App. LEXIS 4806, (Dec. 20, 1989)]. As the Supreme Court said in *Jenks*, [61 Ohio St.3d at 272, 574 N.E.2d 492], "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence."

*State v. Webb*, 8th Dist. Cuyahoga No. 72588, 1998 Ohio App. LEXIS 2851, 8-9 (June 25, 1998).

{¶73} In the instant matter, after reviewing the record, we find that the state presented sufficient circumstantial evidence, if believed, to support appellant's murder convictions. First, the state presented evidence regarding appellant's opportunity to commit the murder, specifically, testimony placing appellant at the victim's house on the day of the August 29, 2007 incident. Appellant informed Officer Manion that he had lunch with the victim before her skating lesson at 1:00 p.m. (Tr. 715.)

{¶74} Although appellant asserted that he left for Michigan around 12:40 p.m. on the day of the incident, and that he was in Michigan at the time of the fire (Tr. 1861), appellant's cell phone records indicate that he was in North Olmsted and Westlake. The victim resided in Fairview Park, Ohio. North Olmsted adjoins Fairview Park to the southwest, and Westlake adjoins Fairview Park to the northwest. Detective Harrington testified that the fire started "sometime around four-ish[.]" (Tr. 1816.) When Scott called appellant at 4:55 p.m., after first responders had been dispatched to the victim's house at 4:45 p.m., appellant's cell phone records indicate that he was in Sheffield, Ohio. (Tr. 1738-1741.)

**{¶75}** The victim's friend, Lynn Malec, testified that she spoke with the victim on the phone on the day of the incident around 2:00 p.m., after her skating lesson. Malec recalled that the victim abruptly ended the phone call in the middle of their conversation: "we were just in the middle of something almost and she said: Oh, I have to go. Almost as if somebody was, like, at the door or something came up." (Tr. 834.)

**{¶76}** Based on this circumstantial evidence, a reasonable inference could be made that after the victim initially confronted appellant about the charges on her credit card, she brought the issue up again during their lunch, or even tried to retrieve her credit cards from appellant; appellant was upset by the victim's confrontation; as a result, appellant returned to the victim's house after her skating lesson, causing the victim to abruptly end her phone call with Malec; appellant killed the victim; and then appellant set the victim's body on fire in order to cover up the evidence.

**{¶77}** The state also presented evidence regarding a motive for appellant to harm the victim. Appellant had access to the victim's credit cards, the victim disputed at least one of the credit card charges approximately two weeks before the August 29, 2007 incident, and she confronted appellant about his use of her credit card prior to the incident. (Tr. 1419.)

**{¶78}** Scott testified that appellant was using the victim's credit card without her consent and that the victim confronted appellant about the charges incurred on her credit card. He explained that the victim wanted appellant to get a job so that he could pay her back. (Tr. 1419.)

**{¶79}** Scott's testimony was supported by the testimony of Detective Harrington. Detective Harrington testified that he retrieved and examined the victim's mail and also reviewed the victim's credit card statements. The documentation for the victim's Discover card included

an August 25, 2007 dispute letter pertaining to a credit card charge that the victim was disputing. (Tr. 1724.) The documentation for the victim's Citibank credit card included a dispute letter from security services. (Tr. 1732-1733; state's exhibit No. 285.) Finally, as noted above, the record reflects that appellant continued to use the victim's credit cards after the August 29, 2007 incident.

**{¶80}** Finally, appellant argues that the evidence indicates that the victim died from natural causes, and/or that the fire started accidently from a cigarette or in the victim's kitchen. Furthermore, he appears to suggest that the evidence indicates that Scott was responsible for the victim's death and the fire in her home. These arguments pertain to the manifest weight of the evidence and are not properly raised in a sufficiency context.

**{¶81}** Considering all of the aforementioned circumstantial evidence in a light most favorable to the state, as we must, we find that reasonable minds could conclude that appellant had both the opportunity and a motive for killing the victim and setting her body on fire and, thus, that appellant was, in fact, the person who did so. *See State v. Reddy*, 10th Dist. Franklin No. 09AP-868, 2010-Ohio-3892, ¶ 18, citing *State v. Mellert*, 9th Dist. Medina No. 08CA0068-M, 2009-Ohio-2297, ¶ 8 (defendant's conviction was supported by sufficient circumstantial evidence that demonstrated both motive and opportunity).

**{¶82}** For all of these reasons, appellant's second assignment of error is overruled in this respect.

## 2.   Aggravated Arson:   Counts 3 and 4

**{¶83}** Appellant was convicted of aggravated arson, in violation of R.C. 2909.02(A)(1), which provides, "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]" These counts

pertained to the injuries sustained by firefighters David Stein of the North Olmsted Fire Department and Steve Lee of the Fairview Park Fire Department.

{¶84} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶85} In support of his sufficiency challenge, appellant argues that there was no evidence that he knowingly created a substantial risk of serious physical harm to firefighters Lee and Stein. He contends that the firefighters did not suffer serious physical harm because they did not receive medical treatment for their injuries. Appellant's arguments are unsupported by the record.

{¶86} Stein testified that he suffered a fourth-degree burn to his hand while fighting the fire at Bewley's house. Stein explained that his fourth-degree burn went through the skin on his hand and killed the nerve underneath the skin. (Tr. 858.) Stein asserted that he was treated for the injury to his hand at St. John's Medical Center in Westlake, Ohio, and that he missed approximately three weeks of work due to his injury. (Tr. 858; 861-862.)

**{¶87}** Lee testified that he suffered a second-degree burn to his face while fighting the fire at Bewley's house. Lee explained that he received treatment for the injury to his face at the hospital, he missed two weeks of work due to his injury, and that he suffered pain and "blistering" to his face as a result of the second-degree burn. (Tr. 881-882; 884; 886.)

**{¶88}** Finally, as noted above, Reitmeier and Dolence both opined that the fire in Bewley's house was intentionally set, with the origin of the fire being the victim's body — specifically, her upper torso and head. (Tr. 1610; 1159; 1166; 1214; 1573.)

**{¶89}** The testimony of Reitmeier and Dolence regarding the cause and origin of the fire, and the testimony of Stein and Lee regarding the injuries they sustained while fighting the fire, if believed, is sufficient to support appellant's convictions for aggravated arson on Counts 3 and 4.

**{¶90}** Appellant's second assignment of error is overruled in this respect.

### 3. Aggravated Arson: Count 5

**{¶91}** Appellant was convicted of aggravated arson, in violation of R.C. 2909.02(A)(2),which provides, "[n]o person, by means of fire or explosion, shall knowingly * * * [c]ause physical harm to any occupied structure." Pursuant to R.C. 2901.01(A)(4), "'[p]hysical harm to property' means any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment. 'Physical harm to property' does not include wear and tear occasioned by normal use."

**{¶92}** In support of his sufficiency challenge, appellant argues that there was no evidence that he knowingly caused physical harm to Bewley's home, and there was "no evidence to support a conclusion that anyone set the house on fire." Appellant's brief at 32. Appellant's argument is entirely unsupported by the record.

**{¶93}** Initially, it would be ludicrous to suggest that the fire did not result in loss to the value of the victim's house and/or did not interfere with the use or enjoyment of the house. Further, as noted above, both Reitmeier and Dolence testified, based on their experience investigating fires and the investigation they conducted of the Bewley fire, that the fire was intentionally set. This testimony, if believed, is sufficient to support appellant's conviction for aggravated arson on Count 5. Accordingly, appellant's second assignment of error is overruled in this respect.

### C. Manifest Weight

**{¶94}** In his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.

**{¶95}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶96}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga

No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶97}** In the instant matter, in support of his manifest weight challenge, appellant argues that the opinion of the defense's expert witness, Dr. James Pritchard, was more plausible than the opinion of the state's expert witness, Dr. Trelka.

**{¶98}** The trial court recognized Dr. Pritchard as an expert "in internal medicine" and "in determining the manner and cause of death." (Tr. 2118.) Dr. Pritchard opined that the victim died from natural causes, specifically heart disease. Dr. Pritchard acknowledged on cross-examination, however, that he had never performed an autopsy. Dr. Trelka, on the other hand, opined that the victim's cause of death was "homicidal violence."

**{¶99}** The state called Dr. Thomas Gilson, the Medical Examiner for Cuyahoga County and director of the county's crime laboratory, as a rebuttal witness. Dr. Gilson agreed with Dr. Trelka's findings regarding the cause of death. Dr. Gilson testified, "homicidal violence of undetermined type, is the best explanation I can give you as a forensic pathologist as to why [the victim] died." (Tr. 2175.) Dr. Gilson disagreed with the defense's theory and the opinion of Dr. Pritchard that the victim died of natural causes. He explained, "Ms. Bewley does have natural disease, but she was pretty thoroughly evaluated in the year prior to her death and she

didn't really demonstrate a lot of untoward affects of the heart disease that she had." (Tr. 2175-2176.)

{¶100} After reviewing the record, we cannot say that this is "an exceptional case" in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The jury had sufficient information to judge the credibility of each witness, and the jury "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. The jury was in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *Antill*, 176 Ohio St. at 66, 197 N.E.2d 548.

{¶101} The defense's theories of the cases were that the victim died of natural causes, the fire was accidental in nature, and that Scott was responsible for the murder and arson. On the other hand, the state's theory of the case was that the victim and appellant had a falling out and, as a result, appellant murdered her and set her body on fire.

{¶102} "When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not the province of this court to choose which version we believe." *See State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002 Ohio App. LEXIS 1197, 6 (Mar. 13, 2002), citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Appellant's convictions are not against the manifest weight of the

evidence merely because the jury rejected the defense's theories and found the state's version of the events to be more believable.

{¶103} As noted above, the question in this case was whether appellant murdered the victim and set her body on fire. Although the evidence establishing appellant's guilt was circumstantial, rather than direct, we cannot conclude that the jury lost its way in returning guilty verdicts on the murder and arson counts.

{¶104} For all of these reasons, appellant's third assignment of error is overruled.

### D. Authentication

{¶105} In his fourth assignment of error, appellant argues, in part, that the trial court erred by admitting a letter from Olan Mills because it was not authenticated by an employee of the company, as required by Evid.R. 901.

{¶106} As noted above, appellant informed Officer Manion that on the day of the August 29, 2007 incident, his employment with Olan Mills required him to travel to Michigan. (Tr. 717-718.) Investigators attempted to verify appellant's employment and his whereabouts at the time of the incident. Lieutenant Shephard contacted Olan Mills in 2017, but learned that the company had folded. (Tr. 1786.) Investigators received the letter (state's exhibit No. 275) with which appellant takes issue pursuant to a subpoena. The letter indicated that appellant was not employed by Olan Mills. (Tr. 1892-1893.)

> Evid.R. 901 requires the authentication or identification of evidence as a condition precedent to admissibility. Testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient to authenticate the purported evidence. Evid.R. 901(B)(1). Courts have interpreted this subsection of the rule to allow "[']any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification.[']" *State v. Black*, 7th Dist. Mahoning No. 16 MA 0085, 2018-Ohio-1342, ¶ 14, quoting *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 15 (2d

Dist.).  We review the court's ruling on the adequacy of authentication for an abuse of discretion.  *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 33, citing *State v. Easter*, 75 Ohio App.3d 22, 26-27, 598 N.E.2d 845 (4th Dist.1991).

*State v. Lenard*, 8th Dist. Cuyahoga No. 105998, 2018-Ohio-3365, ¶ 28.

**{¶107}** In the instant matter, assuming, arguendo, that the letter was not properly authenticated, we cannot say that but for the introduction of the letter, appellant would not have been convicted of killing the victim and setting her body on fire.  *See State v. Gordon*, 8th Dist. Cuyahoga No. 106023, 2018-Ohio-2292, ¶ 66.  "This court has held that a 'nonconstitutional error is harmless when there is substantial other evidence to support the guilty verdict.'"  *Id*., quoting *State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 97.

**{¶108}** As noted above, there is substantial circumstantial evidence to support appellant's convictions.  Furthermore, the information contained in the Olan Mills letter was merely cumulative to appellant's cell phone records, which indicated that he was not in Michigan at the time the 911 call was placed regarding the fire at Bewley's house.

**{¶109}** Based on the foregoing analysis, appellant's fourth assignment of error is overruled in this respect.

### E.  Hearsay

**{¶110}** Appellant further argues in his fourth assignment of error that the trial court erred by admitting the reports of Dolence and Reitmeier because they contained hearsay, in violation of Evid.R. 802 and 803, regarding appellant's conduct and the police investigation.  Appellant does not contend that the reports should not have been admitted.  Rather, he asserts that the trial court "should have excluded the hearsay portions of these records[.]"  Appellant's brief at 37.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence.

Should hearsay statements be admitted improperly, however, such error does not necessarily require reversal of the outcome of the trial if it was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 306-309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

*State v. Thomas*, 8th Dist. Cuyahoga No. 101797, 2015-Ohio-3226, ¶ 39.

**{¶111}** This court reviews rulings involving hearsay for an abuse of discretion. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944. The Ohio Supreme Court has defined an "abuse of discretion" as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

**{¶112}** In the instant matter, regarding Reitmeier's report, the record reflects that the state, at the trial court's request, redacted the background information outlined in the report. The redacted and renumbered report, state's exhibit No. 272-A, does not contain inadmissible hearsay, contrary to appellant's assertion. (Tr. 2086-2087.) Similarly, a review of Dolence's report reflects that it does not contain inadmissible hearsay regarding appellant's conduct or the police investigation.

**{¶113}** Based on the foregoing analysis, appellant's fourth assignment of error is overruled in this respect.

### F. Video Testimony of Grubbs

**{¶114}** In his fifth assignment of error, appellant argues that the trial court erred by permitting Grubbs to testify via live video link, and that his ability to confront and cross-examine Grubbs was compromised.

> The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *Issa*, 93 Ohio St.3d [at] 59, 752 N.E.2d 904, fn. 4. Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

> However, the United States Supreme Court has held that although "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," that "preference must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). ["]In holding that the right to confrontation is not absolute, the court detailed a number of important reasons for that right, including (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant.["] *State v. Marcinick*, 8th Dist. Cuyahoga No. 89736, 2008-Ohio-3553, ¶ 14, citing *Craig* at 845-846. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig* at 845.

*State v. Oliver*, 8th Dist. Cuyahoga No. 106305, 2018-Ohio-3667, ¶ 18-19.

**{¶115}** The *Marcinick* court utilized the two-part analysis from *Craig* in determining whether the defendant's right to confrontation was violated by the admission of testimony at trial via teleconference. This court concluded,

> "[t]o qualify as an exception, the procedure must (1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation — oath, cross-examination, and observation of the witness's demeanor."

*Marcinick* at ¶ 18, quoting *Harrell v. State*, 709 So.2d 1364, 1369 (Fla.1998), citing *Craig* at 849-851. This court went on to hold that the admission of the testimony via teleconference did not violate the defendant's right to confrontation because (1) the state demonstrated that the witness was unavailable, (2) the state established that the witness's testimony was admissible, and (3) the reliability elements of confrontation were preserved by the video link. *Marcinick* at ¶ 22.

{¶116} In the instant matter, during appellant's trial, defense counsel objected to Grubbs testifying via live video link. In support of the objection, defense counsel argued that the state failed to demonstrate that Grubbs was unavailable. Defense counsel emphasized that Grubbs lives in Cleveland and that appellant's trial date had been set for "quite some time." (Tr. 1135.)

{¶117} The state argued that Grubbs should be permitted to testify via live video link because she was not available to testify in person:

> [Grubbs] is absolutely unavailable. We first learned that she was in California just before the trial started. We were trying to get her back. We were doing our best. She does not return back to Cleveland, the Cleveland area, I think until the 5th of November. It's not — I could have the exact date wrong. It's next Sunday.
>
> And she is — trust us, we tried to fly her in. But like I said, she is watching children, so she is absolutely unavailable. Whether or not the trial's been set for a while, it doesn't necessarily make a difference.
>
> And we'd argue that her testimony is absolutely relevant, Your Honor. * * * it'll show that [appellant] was using the credit card — that he was taking money from [the victim], using this credit card while he was courting another women.
>
> * * *
>
> [Grubbs's testimony] is important because he's using a credit card, Your Honor that was found in his possession later.

(Tr. 1137-1138.)   The record reflects that the trial court ultimately permitted Grubbs to testify via live video link.

{¶118} In this appeal, appellant argues that the trial court erred by permitting Grubbs to testify remotely because Grubbs was not unavailable to testify in person, the video-link system was faulty, Grubbs was unable to see the entire courtroom while she testified, and her testimony was completely irrelevant.   After reviewing the record, we disagree.

{¶119} Applying the two-part *Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666, analysis to the facts of this case, we find that the trial court did not err in permitting Grubbs to testify via live video link.   Although Grubbs resided in Cleveland, she was caring for her grandchildren in California.   The state attempted to make arrangements for Grubbs to fly back and testify at trial in person, but the state was unsuccessful in doing so.   Accordingly, based on these fact-specific circumstances, the record reflects that Grubbs was unavailable to testify in person.

{¶120} Furthermore, as noted above, Grubbs's testimony was not only admissible and relevant, it was crucial to the state's case.   The state's case against appellant was largely circumstantial.   Grubbs's testimony regarding the emails appellant sent her from his "foxsheline" email account, and the fact that appellant referred to himself as "Fox" in emails, illustrated to the jury how investigators determined that appellant accessed the banking websites on the victim's computer after her death — the same accounts from which the emails were sent to Grubbs were used to access the banking websites.   As noted above, the forensic examination of the victim's computer revealed that the banking websites were accessed by a "foxsheline" account.

**{¶121}** Finally, the live video link through which Grubbs testified at trial satisfied the elements of confrontation. The record reflects that Grubbs was under oath when she testified, she was subject to cross examination, and the jury and appellant were able to observe Grubbs's demeanor. For all of these reasons, the circumstances in this case satisfy both of the *Craig* elements.

**{¶122}** Assuming, arguendo, that the trial court erred in permitting the video-link testimony of Grubbs, any error in this regard would be harmless because permitting Grubbs to testify via video link was not prejudicial to appellant.

> Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983).

*Oliver*, 8th Dist. Cuyahoga No. 106305, 2018-Ohio-3667, at ¶ 25.

**{¶123}** After reviewing the record, it is evident that any error in permitting Grubbs to testify remotely would be harmless beyond a reasonable doubt. As outlined in the analysis of appellant's first and second assignments of error, the circumstantial evidence introduced by the state at trial, which was independent and unrelated to Grubbs's testimony, supported appellant's convictions.

**{¶124}** Based on the foregoing analysis, appellant's fifth assignment of error is overruled.

## G.   Motions to Dismiss

**{¶125}** In his sixth assignment of error, appellant argues that the trial court erred by denying defense counsel's motion to dismiss based on a violation of appellant's statutory speedy trial rights and preindictment delay.

**{¶126}** The record reflects that appellant's defense counsel filed motions to dismiss on February 20, 2015 (alleging due process violation, preindictment delay, and speedy trial violation), and October 14, 2017 (alleging speedy trial violation).   Appellant filed pro se motions to dismiss on February 19, 2016, and March 28, 2016.

### 1.   Statutory Speedy Trial Rights

**{¶127}** In the instant appeal, appellant argues that his statutory speedy trial rights were violated.

**{¶128}** Appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation raises a mixed question of law and fact.   *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, ¶ 9, citing *State v. Easley*, 4th Dist. Scioto No. 03CA2910, 2005-Ohio-767.   This court applies a de novo review to the legal issues, and independently determines whether the trial court correctly applied the law to the facts of the case.   *Id*. However, we afford great deference to the trial court's findings of fact, if any, if the factual findings are supported by competent, credible evidence.   *Id*.   When reviewing the legal issues presented in a speedy trial claim, we are required to strictly construe the relevant statutes against the state.   *Id*., citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶129} Pursuant to R.C. 2945.71(C)(2), "the state is required to bring a defendant to trial on felony charges within 270 days of arrest." *State v. Martin*, 8th Dist. Cuyahoga No. 106038, 2018-Ohio-1843, ¶ 43, citing *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 19. The "triple count provision" set forth in R.C. 2945.71(E), however, provides that each day a defendant is held in jail in lieu of bail counts as three days for purposes of calculating speedy trial time. *Geraci* at *id*.

{¶130} In his appellate brief, appellant summarily concludes that even when the tolling events set forth in R.C. 2945.72 are considered, "the [s]tate failed to bring [him] to trial within the statutory speedy trial limits; entitling him to immediate discharge." Appellant's brief at 38. He does not address any of the applicable tolling events or cite to parts of the record in support of his assertion that "[w]ell over 270 days had passed" between his arrest and the commencement of trial. *See* App.R. 16(A)(7).

{¶131} It is undisputed that the triple-count provision under R.C. 2945.71(E) applies in this case because appellant was arrested on December 31, 2014, and remained incarcerated until trial commenced.

{¶132} As an initial matter, we note that the trial court stated that there was an APA hold on appellant. (Tr. 26.) The triple-count provision is inapplicable when an accused is held in jail pursuant to a valid parole holder. *See State v. Glover*, 8th Dist. Cuyahoga No. 89059, 2007-Ohio-5727, ¶ 3, citing *State v. Brown*, 64 Ohio St.3d 476, 479, 597 N.E.2d 97 (1992).

{¶133} Nevertheless, after reviewing the record, we find no merit to appellant's assertion that his statutory speedy trial rights were violated. R.C. 2945.72 sets forth the following relevant circumstances under which speedy trial time is tolled:

> (B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

* * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]

{¶134} In the instant matter, the record reflects that on December 30, 2014, appellant was indicted and a capias was issued for his arrest. Appellant was taken into custody the following day, December 31, 2014.

{¶135} Appellant fails to acknowledge that his own actions resulted in delaying trial. Specifically, trial was delayed, in large part, based on (1) appellant's filing of at least three motions to disqualify appointed counsel, which the trial court granted; (2) appellant's and/or defense counsel's multiple requests for continuances of pretrial conferences; and (3) appellant's filing of several pro se motions, despite the fact that he was represented by counsel.

{¶136} Speedy trial time was tolled by the following motions filed by appellant's first appointed counsel: demand for discovery and bill of particulars, filed on January 5, 2015; motion to appoint an investigator, filed January 9, 2015; motion to dismiss, filed on February 20, 2015; motions for grand jury transcripts, the names of grand jury witnesses, and funds to retain an expert, filed February 23, 2015; demand for discovery, filed on April 3, 2015; motion for discovery, filed on April 13, 2015; motion to compel discovery, filed on May 3, 2015; motions to

compel law enforcement to turn over materials related to the investigation and disclosure of exculpatory evidence, filed May 4, 2015; motion in limine, filed May 7, 2015; motion to appoint arson investigator, filed May 21, 2015; motion for appropriation of funds for an expert witness, filed June 3, 2015; motion for disclosure of impeaching information, filed June 25, 2015; second motion to compel discovery, filed July 8, 2015; and supplemental motion for disclosure of exculpatory evidence, filed July 29, 2015.

{¶137} Appellant filed a waiver of speedy trial time from May 27, 2015 to October 30, 2015.

{¶138} On October 14, 2015, the trial court granted appellant's motion for new counsel and appointed a new attorney to represent appellant. Speedy trial time was tolled by the appellant's second appointed counsel's motion for discovery, request for evidence, and motion for bill of particulars, filed October 15, 2015.

{¶139} On April 19, 2016, appellant filed a notice of substitution of counsel. Appellant's third attorney filed the following motions that tolled speedy trial time: motions for bill of particulars and discovery, filed on April 19, 2016; motion for bond reduction, filed September 6, 2016; motion for continuance, filed September 13, 2016; motion to suppress, filed October 11, 2016; motion to supplement suppression motion, filed October 17, 2016; and motion in limine, filed December 9, 2016. On November 1, 2016, trial was rescheduled, at appellant's request, to December 12, 2016.

{¶140} Appellant's trial initially commenced on December 12, 2016. However, trial was rescheduled, at appellant's request, to January 9, 2017. The reason for the continuance was that "additional information has been brought forward by [appellant]."

{¶141} The record reflects that the case was reassigned to a new judge on January 9, 2017. The trial court's January 9, 2017 journal entry provides that the case was transferred "for good cause shown[.]"

{¶142} On January 9, 2017, appellant's third attorney filed a motion to withdraw as counsel. The trial court granted counsel's motion and assigned a fourth attorney to represent appellant on January 17, 2017. Appellant's fourth attorney filed motions for discovery, bill of particulars, a motion to examine mitigatory material, and a motion requesting evidence on January 25, 2017. These filings tolled speedy trial time.

{¶143} Appellant was referred for a competency evaluation on February 8, 2017. This referral tolled speedy trial time, pursuant to R.C. 2945.72(B).

{¶144} The trial court appointed secondary defense counsel to represent appellant on February 8, 2017. Thereafter, counsel filed the following motions that tolled speedy trial time: motion for discovery/bill of particulars, filed on February 10, 2017; motion for appointment of defense investigator, filed February 18, 2017; motion for bond reduction, filed March 2, 2017; motion to reconsider motion for bond reduction, filed May 13, 2017; motion for appointment of cell phone expert witness, filed July 21, 2017; motion to recuse the trial judge and correspondence, filed October 5, 2017.

{¶145} Finally, the following filings by the defense tolled speedy trial time: motion to correct deficiencies, for a continuance, or, in the alternative, to disqualify counsel, and correspondence, filed October 13, 2017; motion to dismiss, filed October 14, 2017; and motions in limine and to submit jury questionnaire, filed October 19, 2017. Appellant's trial ultimately commenced on October 23, 2017.

**{¶146}** The state filed discovery demands on April 19, 2016 and September 29, 2016. The record reflects that the defense did not respond to the state's discovery demands until more than one year later, on October 16, 2017. Appellant's failure to respond to the state's request for discovery constitutes neglect that tolls the running of speedy trial time, pursuant to R.C. 2945.72(D). *See State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of the syllabus. Generally, 30 days is considered to be a reasonable time to respond to discovery requests. *Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, at ¶ 26.

**{¶147}** Pretrial conferences were continued at the request of the defense on the following dates: (1) 2015: January 29, February 13, February 26, March 12, March 19, March 26, April 15, May 27, June 17, July 15, July 30, September 3, September 14, November 4, November 19, December 9; (2) 2016: January 5, January 25, February 3, February 9; and (3) 2017: January 17, February 9, February 22, February 24, March 2, March 21, April 6, April 25, May 18, June 7, June 13, June 29, July 5, July 26, August 1, August 21, September 12, September 27, and October 10. On the other hand, pretrial conferences were continued at the state's request on two occasions, January 14 and December 1, 2015.

**{¶148}** Appellant filed various pro se motions on September 25, 2015, October 2, 2015, December 30, 2015, February 4, 2016, February 19, 2016, March 1, 2016, March 4, 2016, March 28, 2016, March 31, 2016, and June 19, 2017. It is well-established that a defendant has the right to counsel or the right to act pro se, but a defendant does not have the right to hybrid representation. *See State v. Hicks*, 8th Dist. Cuyahoga No. 106101, 2018-Ohio-1964, ¶ 15.

**{¶149}** On April 15, 2016, the state filed a motion for a continuance of the trial date, which was set for May 2, 2016. In its brief in support of the motion, the prosecutor asserted

that she was unavailable on the scheduled trial date because she was involved in a capital murder trial. Furthermore, due to the complexity of appellant's prosecution, the prosecutor opined that it would not be appropriate for another prosecuting attorney to represent the state on her behalf at appellant's trial. On April 21, 2016, the trial court granted the state's motion for a continuance, and converted the May 2, 2016 trial date to a pretrial conference. However, the trial court did not incorporate the state's grounds for the request in its journal entry. *See State v. Cochern*, 8th Dist. Cuyahoga No. 104960, 2018-Ohio-265, ¶ 66. On April 25, 2017, the parties jointly requested a continuance of the date of trial to August 21, 2017.

{¶150} Based on the foregoing analysis, we find that appellant's statutory right to a speedy trial was not violated. The record reflects that appellant was brought to trial within the statutory speedy trial time constraints, and the extended delay in the commencement of trial primarily resulted from appellant's own actions.

{¶151} For all of these reasons, appellant's sixth assignment of error is overruled in this respect.

### 2. Preindictment Delay

{¶152} Appellant also appears to argue in his sixth assignment of error that the case should have been dismissed based on preindictment delay.

{¶153} Defense counsel raised the issue of preindictment delay in the motion to dismiss filed on February 20, 2015. The trial court set a hearing on the motion to dismiss for May 27, 2015. On May 27, 2015, the trial court held a hearing during which the state to agreed to dismiss Counts 6 (felonious assault), 7 (theft), and 8 (tampering with evidence) of the indictment based on the fact that the statutes of limitations had expired. (Tr. 5.)

**{¶154}** It is unclear whether the dismissal of these counts resolved defense counsel's concerns regarding preindictment delay. Nevertheless, the subsequent motions to dismiss filed by appellant and defense counsel did not raise the issue of preindictment delay. Rather, these subsequent motions were based on appellant's speedy trial rights.

> In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the findings of fact made by the trial judge. *State v. Hunter*, [2017-Ohio-4180, 92 N.E.3d 137, ¶ 16 (8th Dist.)].
>
> The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection in cases where the preindictment delay was unjustifiable and caused actual prejudice. *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12.
>
> The Ohio Supreme Court has established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. *Jones* at ¶ 13. Under this framework, the defendant bears the initial burden of presenting evidence of actual prejudice. *Id*. "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Jones* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99. Therefore, if the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *Adams* at ¶ 107.
> "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id*., quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *Id*. at ¶ 23.

*State v. Walker*, 8th Dist. Cuyahoga No. 106414, 2018-Ohio-3669, ¶ 15-18.

**{¶155}** In the instant appeal, appellant appears to argue that during the seven-year delay between his arrest in September 2007 and the December 30, 2014 indictment, he was deprived of access to the phone records of other suspects and an ability to defend against the charges by obtaining independent evidence regarding his whereabouts at the time of the incident; he claims the crime scene was remodeled and witnesses' memory faded during the delay; and the evidence available to the state in 2007 was "essentially the same evidence" that was available to the state in 2014.

**{¶156}** After reviewing the record, we find that appellant failed to meet his burden of demonstrating actual prejudice. Appellant's preindictment delay argument is premised on speculation that (1) the phone records of Scott and/or Skuderin would have been available to show that they were in the vicinity of Bewley's house at the time the fire broke out, and (2) that other evidence existed regarding his whereabouts at the time of the incident. This type of speculation is insufficient to demonstrate actual prejudice. *See State v. Herrington*, 8th Dist. Cuyahoga No. 106225, 2018-Ohio-3049, ¶ 16-17. Furthermore, Scott and Skuderin testified at trial regarding their whereabouts, and appellant's brother-in-law Jeffrey Clegg and Lieutenant Shephard testified about appellant's whereabouts at the time of the incident.

**{¶157}** Regarding appellant's arguments of faded memories and the fact that the victim's house had been remodeled,

> [T]he possibility of faded memories, unavailable witnesses, and lost or destroyed evidence does not, in and of itself, constitute actual prejudice. [*State v.*] *Richardson*, [2016-Ohio-5843, 70 N.E.3d 1175, ¶ 11 (8th Dist.)]; *Jones*, [148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 21]. "Those are 'the real possibilit[ies] of prejudice inherent in any extended delay,' and statutes of

limitations sufficiently protect against them." *Jones* at ¶ 21, quoting *Marion*[,

404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468]. Rather, the defendant must

establish what the missing evidence or unavailable witnesses might have offered

in assisting in his defense. *Richardson* at ¶ 13.

*State v. Smith*, 8th Dist. Cuyahoga No. 104203, 2016-Ohio-7893, ¶ 19.

**{¶158}** In this case, appellant fails to identify what missing evidence could have been

obtained from the victim's house and offered at trial to assist in his defense had the house not

been remodeled.

**{¶159}** For all of the foregoing reasons, we find that the trial court did not err by denying

appellant's motion to dismiss. Appellant failed to demonstrate actual prejudice, and thus, he

was not entitled to dismissal based on preindictment delay. Appellant's sixth assignment of

error is overruled in this respect.

### H. Motions for Mistrial

**{¶160}** In his seventh assignment of error, appellant argues that the trial court erred by

denying defense counsel's motions for a mistrial.

### 1. Standard of Review

The standard of review for evaluating the trial court's decision on a motion for a mistrial is an abuse of discretion. *Cleveland v. Gonzalez*, [8th Dist. Cuyahoga No. 85070, 2005-Ohio-4413]; *Garner*, 74 Ohio St.3d [at] 59, 656 N.E.2d 623; *Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900. In order to demonstrate an abuse of discretion on these matters, a criminal appellant must be able to show that the trial court's decision was arbitrary, unreasonable, or unconscionable. *State v. Nichols*, 85 Ohio App.3d 65, 619 N.E.2d 80 [(4th Dist.1993)].

A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 [(2d Dist.1988)]. The granting of a mistrial is only necessary when a

fair trial is no longer possible. [*Franklin*, 62 Ohio St.3d at 127, 580 N.E.2d 1], citing *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 [(1973)]. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected. *State v. Goerndt*, [8th Dist. Cuyahoga No. 88892, 2007-Ohio-4067].

*State v. Taylor*, 8th Dist. Cuyahoga No. 95041, 2011-Ohio-839, ¶ 25-26.

{¶161} The record reflects that the defense moved for a mistrial based on the following two grounds: (1) the state's purported failure to disclose exculpatory evidence — the fire marshal's report from the fire at Scott's house in 2008 — to the defense, and (2) the prosecutors' reference to appellant's involvement in an arson-related event during cross-examination of Dr. Pritchard.

## 2. *Brady* Violation

{¶162} The defense first moved for a mistrial on the basis that the fire marshal's report from the fire that occurred at Scott's house in 2008 contained exculpatory evidence, and the state failed to disclose this evidence to the defense. Appellant argues that the state's failure to disclose the report and exculpatory information therein "compromised the defense's ability to effectively prepare for trial." Appellant's brief at 39.

{¶163} A discussion took place on the record regarding the report and whether defense counsel elicited testimony from Scott about the cause of the 2008 fire. A review of the record reflects that the defense was aware that the cause of the 2008 fire was careless smoking — Scott left a cigarette on the stove in his house.

{¶164} A *Brady* violation, established in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215 (1963), occurs only where the suppressed exculpatory evidence is discovered after trial. *See State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 40. When the evidence is disclosed or introduced at trial, there is no *Brady* violation. *Id*.

**{¶165}** In the instant matter, the record reflects that the purportedly exculpatory evidence, the fire marshal report, was presented during trial. Accordingly, a *Brady* violation requiring a new trial did not exist. *State v. Mills*, 8th Dist. Cuyahoga No. 90383, 2008-Ohio-3666, ¶ 11, citing *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678.

**{¶166}** Crim.R. 16(L)(1), governing the regulation of discovery, provides

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

**{¶167}** In this case, as noted above, there was a discussion on the record regarding the information in the fire marshal report and the cause of the fire. The record reflects that the state did not have the report prior to trial, but rather received a copy of the report during trial. (*See* tr. 1652.) After the state received a copy of the report, the trial court provided the defense with time to analyze the report. (*See* tr. 1654.)

**{¶168}** We cannot say that the fire marshal report pertaining to the 2008 fire materially affected appellant's rights. One of the defense's theories of the case was that the fire at Bewley's house was caused by a cigarette. To the extent that appellant argues that the fire marshal report was exculpatory because the 2008 fire was similar to the Bewley fire in that they were both caused by smoking, Reitmeier testified that there was no indication that anyone had been smoking inside Bewley's house. (Tr. 1607.) While the fire at Scott's house was accidental in nature, investigators opined that the Bewley fire was intentionally set.

{¶169} Based on the foregoing analysis, we find that the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial pertaining to the fire marshal report and purported *Brady* violation. Appellant's seventh assignment of error is overruled in this respect.

### 3. Reference to Prior Arson

{¶170} Appellant argues that the prosecutor's reference to his prior arson conviction "severely and unfairly prejudiced the integrity of the case" and "compromised the [jury's] verdict[.]" Appellant's brief at 39.

{¶171} Contrary to appellant's assertion, the prosecutor did not reference appellant's prior arson conviction during cross-examination. Rather, the prosecutor asked Dr. Pritchard whether he was aware that appellant had "an arson in his past[.]" (Tr. 2144-2146.) As noted above in the analysis of appellant's first assignment of error, the jury already heard Jason Spang's testimony about the fire that broke out in the family home after appellant volunteered to "fix" the furnace. Finally, the trial court provided a limiting instruction to the jury, and a jury is presumed to follow the instructions provided by the trial court. *See Garner*, 74 Ohio St.3d at 59, 656 N.E.2d 623.

{¶172} Based on the foregoing analysis, we find that the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial pertaining to the reference to arson in appellant's past. Appellant's seventh assignment of error is overruled in this respect.

### I. Consecutive Sentences

{¶173} In his eighth assignment of error, appellant argues that the trial court erred in imposing consecutive sentences.

**{¶174}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

**{¶175}** R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶176}** Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

{¶177} In the instant matter, appellant appears to acknowledge that the trial court made the requisite findings pursuant to R.C. 2929.14(C)(4). Nevertheless, appellant argues the trial court's findings were "perfunctory" and that the court offered "essentially no rationale" in support of its findings. Appellant's brief at 40. Appellant's argument is misplaced. A trial court is not required to state its reasons in support of its consecutive sentence findings. *See State v. Johnson*, 8th Dist. Cuyahoga No. 106450, 2018-Ohio-3670, ¶ 49, citing *Bonnell* at ¶ 37.

{¶178} Furthermore, appellant appears to argue that consecutive sentences were not warranted and that a prison sentence of 15 years to life would adequately protect the public. In support of this argument, appellant asserts that if the parole board determines that he is, in fact, a threat to society in 15 years, they will simply not release him from prison. Essentially, appellant disagrees with the trial court's findings.

{¶179} As an initial matter, this court has upheld consecutive sentences that include a life sentence as long as the trial court complied with R.C. 2929.14(C)(4) and made the requisite findings. *See State v. Bennett*, 8th Dist. Cuyahoga No. 105737, 2018-Ohio-287, ¶ 4 (this court upheld an aggregate sentence of life with parole eligibility after 27 years); *State v. Peak*, 8th Dist. Cuyahoga No. 102850, 2015-Ohio-4702, ¶ 6 (this court upheld the trial court's decision to run life sentences with parole eligibility after ten years on two counts of rape consecutively); *see also*

*State v. Plymale*, 4th Dist. Gallia No. 15CA1, 2016-Ohio-3340, ¶ 64, citing *State v. Roark*, 3d Dist. Mercer No. 10-14-11, 2015-Ohio-3811, ¶ 24 (recognizing that appellate courts have upheld the imposition of consecutive life sentences without the possibility of parole as long as the trial court complies with R.C. 2929.14(C)(4) and makes the required findings).

{¶180} The record reflects that the trial court made the requisite consecutive sentence findings during the sentencing hearing. In making the first finding, the trial court stated, "consecutive sentences are necessary, again, to protect the public from future crimes by you and to punish you." (Tr. 2357.) In making the second finding, the trial court stated, "[consecutive sentences] are not disproportionate to the seriousness of your conduct and to the danger that you pose the public." (Tr. 2357.)

{¶181} In making the third finding, the trial court determined that R.C. 2929.14(C)(4)(b) and (c) applied. Specifically, the trial court stated, "[t]his really has been a course of conduct here in terms of the misuse of the credit cards, obviously the harm caused to Miss Bewley and the arson and certainly your criminal history demonstrates that consecutive sentences are necessary to protect the public from future crimes by you." (Tr. 2357-2358.)

{¶182} After reviewing the record, we find that the trial court did not err in imposing consecutive sentences. The record reflects that the trial court made the appropriate consecutive sentence findings, and the court engaged in the correct analysis required under R.C. 2929.14(C)(4). We do not clearly and convincingly find that the record does not support the trial court's findings. Finally, the trial court incorporated its consecutive sentence findings into its November 30, 2017 sentencing journal entry, as required by *Bonnell*. *Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus.

**{¶183}** For all of the foregoing reasons, appellant's eighth assignment of error is overruled.

### III. Conclusion

**{¶184}** After thoroughly reviewing the record, we affirm appellant's convictions and the trial court's sentence.

**{¶185}** The trial court did not err by denying appellant's motion in limine; appellant's rights to due process and a fair trial were not violated by the trial court's admission of other acts evidence; appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence; the trial court did not err by admitting the Olan Mills letter and the reports of investigators Dolence and Reitmeier; the trial court did not err in permitting Grubbs to testify remotely;    the trial court did not err by denying appellant's motions to dismiss; appellant's speedy trial rights were not violated; the trial court did not err by denying defense counsel's motions for a mistrial; and the trial court did not err in imposing consecutive sentences.

**{¶186}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's convictions having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR
KEY WORDS: