[Cite as *State v. Foster*, 2025-Ohio-836.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114148 |
| v. | : | |
| TERRY FOSTER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 13, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-670220-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carson Strang, Assistant Prosecuting Attorney, *for appellee*.

Brian D. Kraft, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Terry Foster ("Foster"), appeals the trial court's imposition of consecutive sentences following resentencing. Upon review, we affirm.

## I. Facts and Procedural History

{¶ 2} Foster previously appealed his guilty pleas and sentences in *State v. Foster*, 2024-Ohio-2075 (8th Dist.) ("*Foster I*"). Therein, this court made the following factual findings:

> Foster, and a codefendant whose case proceeded separately, were each indicted on 26 counts arising from the murder of victim Napoleon Abrams ("N.A."), attempted murders of Jacqueline Jones ("J.J.") and Joseph Armstrong ("J.A.") on November 16, 2021, and the murder of Latrice Burks (L.B.") on November 22, 2021. Counts 1 through 5 carried one-year, three-year, or five-year firearm specifications. Counts 6 through 19 carried one-year or three-year firearm specifications. Counts 20 through 26 were drug related.
>
> On February 1, 2023, represented by counsel, Foster pleaded guilty to (1) Count 2, murder of L.B. under R.C. 2903.02(A), an unclassified felony, with a three-year firearm specification under R.C. 2941.145(A); (2) an amended Count 8, murder to the lesser included offense of involuntary manslaughter of N.A., a felony of the first-degree under R.C. 2903.04, with all firearm specifications deleted; and (3) Count 22, trafficking, a felony of the third-degree, in violation of R.C. 2925.03(A)(2), with cell phone and cash forfeitures.
>
> On February 24, 2023, Foster was sentenced to 21 years to life as follows: (1) Count 2: 15 years to life for murder with a three-year gun specification served prior and consecutive to the underlying sentence; (2) Count 8: three years for involuntary manslaughter to be served consecutive to Count 2; and (3) Count 22: 12 months for drug trafficking with cash and cell phone forfeitures to be served concurrently with Count 2.

(Footnotes omitted.) *Id.* at ¶ 4-6. In *Foster I*, Foster argued that the trial court erred in imposing consecutive sentences without making any of the findings required by R.C. 2929.14(C)(4) at the sentencing hearing or in the sentencing entry. *Id.* at ¶ 31. The State conceded that the proper findings were not made. *Id.* at ¶ 33. Accordingly,

we vacated Foster's consecutive sentences and remanded the matter to the trial court for resentencing. *Id.* at ¶ 34.

{¶ 3} Foster's resentencing hearing was held in June 2024. The State incorporated the sentiments expressed at Foster's original sentencing hearing by reference and advised that it spoke to N.A and L.B.'s families, who asked that the prior sentence be reinstated or increased. The State also briefly revisited the facts of the case:

> As I'm sure you remember, Your Honor, in the first homicide, in [N.A.'s], [Foster's] codefendant, Charnisha Wilson, called Foster over as she got into some sort of an altercation at the house. Terry Foster then kicked in the door, came in and began shooting, striking [N.A.] and killing him. Charnisha Wilson and Terry Foster fled the scene in Foster's vehicle. Realtime crime cameras tracked his vehicle from that street all the way back to his apartment. Five days later, the killing of [L.B.], Realtime crime cameras captured Foster's vehicle literally leaving the apartment building and lot there that he lived at all the way to the crime scene where [L.B.] was shot and killed. Part of the Realtime crime center footage actually showed Foster's vehicle travelling past Charnisha Wilson, turning around to catch up with her again. As [L.B.] approached the vehicle, she was shot and killed from the passenger's side of that vehicle. It's the State's supposition that Charnisha Wilson was the individual in that second homicide who shot and killed [L.B.]. Obviously, the State was proceeding on a complicity theory in that case, Your Honor.
>
> I know we're here specifically for the consecutive sentencing findings. The State would like to just place on the record that pursuant to R.C. 2929.14(C)(4), the offender was indicted for the prior case, that felonious assault, on October 4, 2021, and these offenses were committed in November 2021. So consecutive sentences are necessary to protect the public from future crime or to punish the offender and they're not disproportionate to the seriousness of the offender's conduct; and then under that little (a) section would be that the offender was under indictment at the time.

(Cleaned up.) (Tr. 5-7.) The defense responded, requesting that Foster's involuntary manslaughter sentence be run concurrent to the underlying life sentence.

{¶ 4} The trial court then made the following findings on the record:

> The Court has reviewed the principles and purposes of felony sentencing, listened to what's been said today by the State, listened to what's been said by [Foster's] relative to the resentencing hearing, which is the only matter that's before the Court at this time. The Court has listened and recalled the victim impact statements where the prosecutor indicated that they would like to get more time for [Foster], and I have to formulate my decision based upon the overriding principles and purposes of felony sentencing, namely, to protect the public from future crime by this defendant or others, and to punish the offender using the minimum sanctions that the Court determines accomplish those purposes without imposing an unnecessary burden on the state or local government resources. To achieve these purposes, the Court has considered the need for incapacitation, deterrence, rehabilitation, and providing for restitution. The Court has also considered the seriousness and recidivism factors relevant to the offense and [Foster] pursuant to R.C. 2929.12. The Court must, and will, ensure that the sentence being imposed does not demean the seriousness of the crime, the impact it has on the victims and is consistent with other similar offenses committed by like offenders. Finally, the sentence is not based on any impermissible purposes, namely, the race, ethnic background, gender, or religion of Foster.
>
> . . .
>
> The Court, having reviewed the principles and purposes of felony sentencing, would indicate that the Court imposes prison terms consecutively finding that it is necessary to protect the public from future crime or to punish [Foster]; that consecutive sentences are not disproportionate to the seriousness of [Foster's] conduct and to the danger [he] poses to the public; and that [Foster] committed one or more of the multiple offenses while [he] was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense. It's my recollection that he had been under indictment for felonious assault [on October 4, 2021] and was presently on bond.

*Id.* at 20-23.

{¶ 5} The State noted that the trial court could also make findings under R.C. 2929.14(C)(4)(b) and (c), emphasizing that "we do have the death of two individuals, that being [N.A.] and [L.B.], and I don't think there's anything greater or more serious that the taking of another person's life, much less two other people's lives." *Id.* at 26-27. The trial court advised that the death of two people was a basis for its imposition of consecutive sentences and further found:

> [I]n an abundance of caution, the Court will indicate that the consecutive finding is necessary to protect the public from future crime and to punish [Foster] and that consecutive sentences are not disproportionate to the seriousness of [his] conduct and to the danger [he] poses to the public; and that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [Foster's] conduct.

*Id.* at 27-28.

{¶ 6} The trial court sentenced Foster as follows:

> The court imposes a prison sentence at the Lorain Correctional Institution of 21 years to life. Foster is sentenced to 15 years to life as to Count 2. Three-year gun specification to be served prior to and consecutive to underlying sentence as to Count 2. Foster advised of Reagan Tokes sentencing. . . . Foster is sentenced to the aggregate minimum sentence of 3 years and a maximum sentence of 4.5 years as to Count 8 to be served consecutively to Count 2. Foster is sentenced to 12 months as to Count 22 to be served concurrently with the other counts.
>
> . . .
>
> The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future

crime or to punish Foster; that the consecutive sentences are not disproportionate to the seriousness of Foster's conduct and to the danger he poses to the public; and that Foster committed one or more of the multiple offenses while he was awaiting trial or sentencing, was under a community control, or was under post-release control for a prior offense, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Foster's conduct, or Foster's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

(Cleaned up.) (Nunc Pro Tunc Sentencing Entry, 06/25/24.)

{¶ 7} Foster appeals, raising a single assignment of error for review.

**Assignment of Error**

The record does not support the trial court's imposition of consecutive sentences.

## II. Law and Analysis

{¶ 8} In his sole assignment of error, Foster challenges his consecutive sentences, arguing that the trial court did not engage in any meaningful analysis and the record does not support its findings under R.C. 2929.14(C)(4).

{¶ 9} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public; and (3) one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Moreover, R.C. 2929.14(C)(4) and Crim.R. 32(A)(4) require the trial court to make statutory findings at the sentencing hearing prior to imposing consecutive sentences: "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 2014-Ohio-3177, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999).

{¶ 10} On appeal, a reviewing court must be able to ascertain evidence supporting the trial court's findings from the record before it. *State v. Wells*, 2021-Ohio-2585, ¶ 71, citing *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 2019-Ohio-528, ¶ 176 (8th Dist.), quoting *Bonnell* at ¶ 37. When evaluating a trial court's imposition of consecutive sentences, an appellate court must "review the record, including findings underlying the sentence" and may modify or vacate the sentence only "if it clearly and convincingly finds . . . that the record does not support the sentencing

court's findings under R.C. 2929.14(C)(4) or "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

{¶ 11} On appeal, Foster challenges the trial court's R.C. 2929.14(C)(4) findings and does not claim his sentence is otherwise contrary to law. Our review of the record reveals that the trial court made each of the three required R.C. 2929.14(C)(4) findings during Foster's sentencing hearing after considering the principles and purposes of sentencing, parties' arguments, seriousness of Foster's conduct, and wishes of N.A and L.B.'s families. The trial court specifically found that (1) consecutive sentences are "necessary to protect the public from future crime or to punish [Foster]"; (2) "consecutive sentences are not disproportionate to the seriousness of [Foster's] conduct and to the danger the defendant poses to the public"; and (3) "that [Foster] committed one or more of the multiple offenses while [he] was awaiting trial or sentencing," noting that Foster had been indicted for felonious assault in October 2021 and was on bond. Emphasizing the death of two people, the trial court further found "that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [Foster's] conduct." These findings were also included in the trial court's sentencing entry, which mirrored the language of R.C. 2929.14(C)(4).

{¶ 12} Based on the foregoing, we find that the trial court engaged in the proper analysis, considered the required statutory criteria, and made the necessary findings

before imposing consecutive sentences. Moreover, the record clearly and convincingly supports the trial court's findings that consecutive sentences were appropriate in Foster's case: N.A and L.B. were killed within days of each other as a result of Foster's conduct and he was awaiting trial or sentencing in another case when that conduct occurred. Since we cannot clearly and convincingly conclude that the record does not support the trial court's R.C. 2929.14(C)(4) findings, Foster's single assignment of error is overruled.

{¶ 13} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_Emanuella D. Groves_
EMANUELLA D. GROVES, J.

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR